# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**RICKY EDWARD DORRELL,**

                  **Plaintiff,**

**-vs-**                                                                            **Case No. 6:14-cv-688-Orl-DAB**

**COMMISSIONER OF SOCIAL SECURITY,**

                  **Defendant.**

## MEMORANDUM OPINION AND ORDER

This cause came on for consideration without oral argument on review of the Commissioner's decision to deny Plaintiff's application for disability benefits. For the reasons set forth herein, the decision of the Commissioner is **AFFIRMED.**

## History

Plaintiff applied for a period of disability and disability insurance benefits, alleging that he became unable to work on December 17, 2009 (R. 249-50, 305). The agency denied Plaintiff's applications initially and on reconsideration. Plaintiff requested a hearing before an administrative law judge ("the ALJ"), and an hour long hearing was held on March 14, 2012 (R. 84-130). The ALJ allowed for the filing of post-hearing additional evidence and noted that she would "certainly consider a supplemental hearing" (R. 128).

On March 15, 2012 and March 19, 2012, Plaintiff and his attorney requested the ALJ recuse herself based on her "conduct" at the hearing (R. 372, 394). Plaintiff's counsel also filed an unfair treatment complaint against the ALJ with the Chief ALJ in Falls Church, Virginia (R. 394, Appendix 1 to brief). On June 13, 2012, the agency hearing office contacted counsel to advise that he could request a supplemental hearing (R. 377). Counsel responded:

> I would prefer to wait for decisions on the unfair treatment complaints and request for recusal which were filed in March. If Administrative Judge Fitzgerald is not going to recuse herself, we request that a decision be made as soon as possible so that we can proceed with an appeal.

*Id.*

On June 21, 2012, the agency sent a Notice of Hearing, indicating that the same ALJ would hold a supplemental hearing on October 12, 2012 (R. 214-31). Plaintiff's attorney responded by letter dated July 5, 2012, renewing his request for the ALJ to recuse herself, requesting that the ALJ cancel the supplemental hearing, and asking her to issue a decision as soon as possible (R. 397). According to Plaintiff's brief, the agency responded by letter dated August 24, 2012, stating:

> Our records indicate that a hearing was held in your case on March 14, 2012. We cannot take any action on your complaint at this time because no decision has been issued in your case. If you disagree with the decision once it is issued, you may ask the Appeals Council to review it. The Appeals Council will address your concerns in its notice.

(Plaintiff's Brief, Appendix 4). On September 12, 2012, Plaintiff returned an Acknowledgment or Receipt of the Notice of the October hearing, and acknowledged that he would attend (R. 248). A supplemental hour long hearing was held on October 12, 2012, with Plaintiff, counsel, and a Vocational Expert present (R. 37-83). The ALJ subsequently issued an unfavorable decision, finding Plaintiff to be not disabled (R. 13-36).

Plaintiff filed a Request for Review of the Hearing Decision on January 24, 2013 (R.11). In counsel's brief to the Appeals Council, he contended, among other things, that Plaintiff did not receive a fair hearing before an impartial ALJ (R. 399-405). The Appeals Council denied Plaintiff's request for review on April 17, 2014 (R. 1-6). In declining to grant review, the Appeals Council "considered whether the Administrative Law Judge's action, findings, or conclusion is contrary to the weight of the evidence of record" and found that it was not (R. 1-2). The Appeals Council also considered Plaintiff's allegations that the ALJ was biased and did not afford due process, stating:

> With your request for review, your representative alleged that the Administrative Law Judge "would not allow me to present the testimony of Mr. Darrell's spouse", "would not

-2-

> allow me to cross-examine the vocational expert for more than a couple of minutes, and unnecessarily interrupted the questioning during the brief time I was allowed to ask questions" and "terminated the hearing before Mr. Dorrell had the opportunity to fully present his case." Your representative further alleged that in a supplemental hearing the Administrative Law Judge "testified for the vocational expert," and "was openly hostile" to the representative. The Appeals Council considered your allegations solely as they relate to your case under the abuse of discretion standard in 20 CFR 404.970. After reviewing the entire record, including the hearing recording, we have determined that there was no abuse of discretion and that no other basis exists to grant review in this case. We have completed our action on your request for review.

(R. 2). As the Appeals Council declined to grant review (R. 1-5), the ALJ's decision is the final decision of the Commissioner.

Plaintiff timely filed his complaint in this action, and the parties have consented to the jurisdiction of the United States Magistrate Judge. The matter has been fully briefed and the case is now ripe for review pursuant to 42 U.S.C. §§ 405(g).

## Nature of Claimed Disability

Plaintiff claims to be disabled due to "Bi-polar disorder, tail bone [pain], left knee [pain], [and] spinal stenosis" (R. 309).

*Summary of Evidence Before the ALJ*

Plaintiff was forty one years old as of the alleged onset date (R. 249), with a high school education (R. 309), and past relevant work as a deck hand, heavy equipment operator, truck driver, and companion (R. 29, 310).

In addition to the medical reports and opinions of the treating providers, the record includes Plaintiff's testimony and that of a Vocational Expert ("the VE"), written forms and reports completed by Plaintiff, third party reports, and opinions from state agency examiners and reviewers. The medical evidence relating to the pertinent time period is well detailed in the ALJ's opinion and, in the interest of privacy and brevity, will not be repeated here, except as necessary to address Plaintiff's objections. By way of summary, the ALJ found that Plaintiff had the severe impairments of: disorders of the spine,

left knee degenerative joint disease, obesity, and affective disorder (20 CFR 404.1520(c)), but does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (R. 19). The ALJ then found that Plaintiff had the residual functional capacity ("RFC") to perform a restricted range of:

> light work as defined in 20 CPR 404.1567(b) except with no more than occasional climbing ramps and stairs. balancing, stooping, kneeling, crouching and crawling; no climbing ladders, ropes or scaffolds; no concentrated exposure to hazards, heights or dangerous machinery; no more than occasional interaction with supervisors, coworkers and the general public; no more than simple, routine and repetitive tasks; needs to change positions between sitting and standing at will.

(R. 22).

With the assistance of the Vocational Expert, the ALJ determined that Plaintiff could not return to past relevant work, but found that there are jobs that exist in significant numbers in the national economy that the claimant can perform (R. 30-31), and, therefore, Plaintiff was not disabled.

## Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir.

1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

## Issues and Analysis

Plaintiff raises four issues for review, some of which overlap, contending: 1) he did not receive a fair hearing before an impartial ALJ; 2) the Appeals Council failed to apply correct legal standards in denying the request for review; 3) the ALJ erred in refusing to allow Plaintiff's wife to testify; and 4) the ALJ's determination that Plaintiff could perform other work is unsupported by substantial evidence. The Court considers these objections in the context of the sequential evaluation utilized by the ALJ.

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, he is not disabled. 29 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering residual functional capacity, age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled. 20 C.F.R. § 404.1520(f). The plaintiff bears the burden of persuasion through Step 4, while at Step 5 the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

*A fair hearing*

The Social Security Act "contemplates that disability hearings will be individualized determinations based on evidence adduced at a hearing." *Heckler v. Campbell*, 461 U.S. 458, 467 (1983). A claimant is entitled to a hearing that is both full and fair. *Clark v. Schweiker*, 652 F.2d 399, 404 (5th Cir. 1981). As the Eleventh Circuit held in *Miles v. Chater*, "[t]he ALJ plays a crucial role in the disability review process. Not only is [she] duty-bound to develop a full and fair record, [she] must carefully weigh the evidence, giving individualized consideration to each claim that comes before [her]. Because of the deferential standard of review applied to [her] decision-making, the ALJ's resolution will usually be the final word on a claimant's entitlement to benefits. The impartiality of the ALJ is thus integral to the integrity of the system." 84 F.3d 1397, 1401 (11th Cir. 1996) (citing *Johnson v. Mississippi*, 403 U.S. 212, 216 (1971)).

Plaintiff alleges that the ALJ was biased and committed error in failing to recuse herself "in direct violation of 20 C.F.R. § 404.940, HALLEX Section I-2-1-60(C), and SSR 13-2p."[1] (Plaintiff's brief at p. 8). As evidence of bias, Plaintiff contends that the ALJ: 1) did not allow his wife to testify, 2) interrupted his cross examination of the VE, 3) was "visibly upset" and "openly hostile" at the March 14, 2012 hearing, 4) abruptly ended that hearing and failed to recuse herself, and 5) failed to state in writing the reasons for her refusal to recuse herself. Upon review, the Court is not persuaded.

*Procedural Objections*–Plaintiff objects to an alleged failure on behalf of the agency to comply with the procedures pertaining to disqualification or recusal for bias and asserts that he did not have a full hearing.

The regulations dictate that "[a]n administrative law judge shall not conduct a hearing if he or she is prejudiced or partial with respect to any party or has any interest in the matter pending for

---

[1] It is assumed that this is a typographical error. SSR 13-2p discusses evaluating cases involving drug addiction and alcoholism; neither of which is alleged to be a factor here. Plaintiff likely is referring to SSR 13-1p, which sets forth agency processes for addressing allegations of unfairness or bias. As pointed out by the Commissioner, however, SSR 13-1p was adopted *after* the ALJ's decision. *See* http://www.socialsecurity.gov/OP_Home/rulings/oasi/33/SSR2013-01-oasi-33.html. The version of this Ruling in effect at the time of the ALJ's decision merely indicated that the claimant would be notified in writing about the results of the investigation into complaints about alleged bias or misconduct by ALJs. 57 Fed. Reg. 49186-03, 49187, 1992 WL 312064 (Oct. 30, 1992). That occurred here in the Appeals Council's notification that it would not grant review.

-6-

decision." 20 C.F.R. § 404.940. When a claimant objects to the assignment of a particular ALJ to his or her case, he or she must notify the ALJ at the earliest opportunity. *Id.* The ALJ "shall consider your objections and shall decide whether to proceed with the hearing or withdraw." *Id.* If the ALJ withdraws, the Associate Commissioner for Hearings and Appeals or his delegate will appoint another ALJ to conduct the hearing. *Id.* If the ALJ declines to recuse herself, the claimant may seek reconsideration after the hearing by raising the issue before the Appeals Council. *Id. See also* HALLEX 1-2-1-60(C).[2]

Here, Plaintiff objected to the ALJ *after* the first hearing.  In response, the ALJ did not recuse herself but, as evidenced by the Notice, "decide[d] to proceed with [a supplemental] hearing." While she addressed some of Plaintiff's allegations of bias in her opinion (R. 23, 29 addressing Plaintiff's allegation that his wife could provide information on other limitations), the ALJ did not make explicit findings as to Plaintiff's objections as to her fairness. While a detailed explanation of the reasons for her decision not to disqualify herself was not included in the ALJ's decision, no prejudice is shown, as Plaintiff raised the issues before the Appeals Council and the Appeals Council, noting that it had reviewed the entire record (including the hearing recording), considered and directly addressed the

---

[2]The pertinent provision reads:

**C. Claimant Objects to ALJ Assigned to Case**
If a claimant objects to the ALJ assigned to his or her case, he or she must do so at the earliest opportunity. The ALJ will consider the objection and determine whether to proceed or withdraw.
If the ALJ decides disqualification is appropriate, the procedures in Hearings, Appeals and Litigation Law (HALLEX) manual I-2-1-60 B above apply.
If the ALJ decides before the hearing that the claimant's reasons for objecting do not warrant disqualification, the ALJ will set forth the reasons in writing and reiterate his or her decision in the opening statement at the hearing.
If the claimant objects at the hearing, and the ALJ refuses at the hearing to disqualify himself or herself, the ALJ will set forth the reasons for his or her decision on the record during the hearing.
If the claimant objects after the hearing, and the ALJ decides that the claimant's reasons for objecting do not warrant disqualification, the ALJ will set forth the reasons for his or her decision in the jurisdiction and procedural history section of the decision.
NOTE:  If the ALJ does not withdraw and the claimant objects to the ALJ's decision, the claimant may use non-disqualification as a basis for appeal to the Appeals Council (AC). The AC will process any issues of bias or unfair treatment raised with the claimant's request for review pursuant to HALLEX I-3-3-2 and I-3-1-25. See also 20 CFR 404.970 and 416.1470, and Social Security Ruling 13-1p.

I-2-1-60. DISQUALIFICATION OF AN ADMINISTRATIVE LAW JUDGE ASSIGNED TO A CASE, 1993 WL 642979, at *2.

allegations of bias and notified Plaintiff of the results of its review (R. 1-6).  As the Eleventh Circuit stated in another case involving the same attorney:

> Moise presented to the Appeals Council her claim that she did not receive a full and fair hearing before the ALJ presiding over her case. The Appeals Council addressed her complaint of bias in its notice of action. It stated that it had reviewed those allegations and "carefully studied all of the evidence in the record, including the recording that was made during the hearing." It informed Moise of the results of its review, stating it found "no evidence of unfair treatment or other inappropriate action" by the ALJ. The Appeals Council thus correctly followed its procedures for handling claims of bias on appeal.

*Moise ex rel. Franklin v. Commissioner of Social Security*, 404 Fed.Appx. 424, 426 (11th Cir. 2010).

As for objections that the hearing was inadequate, the ALJ held a supplemental hearing after the objections were raised (thus curing any error in starting the hearing late or terminating it prematurely); allowed for additional post-hearing filings, including the opportunity to submit interrogatories to the Vocational Expert and to file updated information (R. 120, 127-128); and the agency fully considered Plaintiff's claims of unfairness and informed him of the results of this review at the Appeals Council level.  Plaintiff's procedural due process concerns are without merit.

*Substantive Objections to the ALJ's "fairness"*–As observed by the Commissioner, there is a presumption that ALJ's are unbiased. *Schweiker v. McClure*, 456 U.S. 188, 195 (1982). "This presumption can be rebutted by a showing of conflict of interest or some other specific reason for disqualification," and the burden rests on the party making the assertion. *Id.* Plaintiff alleges bias in the ALJ's tone, in not allowing Plaintiff's wife to testify, in limiting counsel's cross-examination of the Vocational Expert, and in terminating the hearing before Plaintiff fully presented his case.

*ALJ's "tone" and the VE examination*– Upon review of the transcript, the Court does not see the "hostility" Plaintiff alleges. Indeed, in the Court's view, there appears to be far more testiness on the part of *counsel,* than shown by the ALJ.  The following excerpt of counsel exhaustively cross-examining the Vocational Expert is illustrative:

> ATTY: Now you said you had training in like doing labor surveys and I understand that. Have you had special training in doing labor surveys?

-8-

VE: You know it's part of my graduate training.
ATTY: So how long ago was that?
ALJ: Mr. Culbertson, do you have Mr. Lovely's curriculum vitae. It's in the record.
ATTY: No, I don't have it.
ALJ: I believe it's 14B.
ATTY: Can I ask him how long ago the special training that he received on labor surveys. If I can't --
VE: I can tell you my graduate work. I completed my graduate work in 2007.
ATTY: Okay, thanks.
ALJ: There you ago.
BY THE ATTORNEY:
Q All right, thanks. Did you complete any labor surveys on the issue of towel folders and dish cloth folders? No, you didn't did you?
A No.
Q That's okay, again, I'm not trying to give you, I'm just trying to clarify everything. So it really comes down then to your experience doesn't it?
A Yes.
Q And your experience as far as --
A And also consultation with other vocational experts. I mean, is there a scenario because are you alleging that there are no towel folders in this whole entire country?
Q I'm not alleging anything. I'm just trying to find out how many towel --
A I mean because
Q I'm trying to find out how many
A Okay, but, can I finish. Well, there's 50,000 --
Q You asked --
A There's 50,000, 20,000 there are significant jobs. We know that. You want to go on an exact number. The thing is you have to get all the way down
ALJ: Mr. Lovely. Next question, Mr. Culbertson.
BY THE ATTORNEY:
Q Thank you. All right, so it comes down to your, and we've already established your experience with towel folders involves seeing one job four years ago that you don't remember where that was, right?
A Correct.
Q All right, now --
ALJ: His personal experience in observing it.
VE: Correct.
ATTY: Judge, now that, I object to that. Come on, please.
ALJ: Object to what?
ATTY: You giving the expert witness the answer, an answer. Again, please, let me ask the questions and let him answer the questions. All right, Mr. Lovely, so how --
ALJ: Mr. Culbertson.
ATTY: Yes.
ALJ: You can allow questions. I can disallow questions. I can ask you to clarify questions, okay.
ATTY: But you can't give answers to the witness, correct?
ALJ: I can repeat an answer he's already given and please try to ask him something that you haven't asked before.
BY THE ATTORNEY:

-9-

Q Mr. Lovely, all this said, based on your personal experience, how many towel folder jobs actually exist in the national economy?
A I think I've already answered that question.
ALJ: You have, next question.
(R. 73-75).

\*\*\*

ALJ: Okay, well, here's the thing. The expert has testified that they do. If you don't agree you are welcome. I'll leave the record open for you. Do you want to submit something contradicting what Mr. Lovely has testified to?
ATTY: No, Your Honor, I'd like to keep cross-examining Mr. Lovely again, to get the, and just to clarify, if that's all the
ALJ: That's fine but you can't keep asking him the same question, sir. Just ask him the question. He's going to answer it and then move on, please.
ATTY: Okay, and I'm sorry you feel that way but again, if you'd let me do the continuity
ALJ: It's not a feeling. It's what been happening. Go ahead. What's your next --
ATTY: Well, Your Honor, again. I respectfully disagree --
ALJ: What is your next question?
ATTY: Again, can we clarify, I mean, you know. We're not playing games here. What is the figure that you have that you think is the numbers of towel folders that he testified actually exist? Is it other than 50,000.
ALJ: Okay, he testified to 50,000. Mr. Lovely, do you want to change your testimony as far as the number of towel folders existing in the national economy.
VE: No, because it's an approximation as I already told you.
ALJ: Okay, next question.
ATTY: Okay and it's based on your estimate.
VE: Yes.
ALJ: He's already testified to that.
ATTY: And there's no scientific methodology that you use, correct?
ALJ: Okay, he already, sir
ATTY: I just want to clarify it.
ALJ: he's already testified to it -
ATTY: Can I just ask that question?
ALJ: No.
ATTY: I can't ask that question.
ALJ: It doesn't need to be clarified.
ATTY: Okay.
ALJ: Now, next question.
ATTY: Are the numbers, okay, of those 50,000 jobs, Mr. Lovely, how many would require the person to be on their feet six or more hours?
ALJ: That's already been asked and answered to.
ATTY: I don't think it has, Your Honor.
ALJ: It has. You can request a copy of the CD.

(R. 77-79).

While the ALJ was impatient with the repetitive nature of counsel's questioning of the VE, she was never rude or inappropriate and there is no showing of any bias. Too, a review of both transcripts belies any contention that Plaintiff did not have an adequate opportunity to cross-examine the VE or that the hearing was otherwise improperly cut short.

*No error in disallowing the testimony of Plaintiff's wife*–Plaintiff next asserts that the ALJ deprived him of his due process rights because the ALJ allegedly refused to allow his wife to testify about his medical condition. The relevant excerpt of the transcript provides:

> ATTY: I have no further questions of Mr. Dorrell, Your Honor, and Mrs. Dorrell is here to testify also.
> ALJ: What is she going to testify to?
> ATTY: She's going to corroborate what Mr. Dorrell said and she might even be able to give you some more details as far as, I think they have
> ALJ: What is she going to corroborate?
> ATTY: His physical and mental limitations.
> ALJ: Okay, well, what is she going to tell me that he hasn't already told me?
> ATTY: Well, I really don't know until she, I'm sure there's going to be more details that he hasn't spoken about. Again, I know that she knows that they've switched him from the Lithium. She might be able to tell you more --
> ALJ: Okay, well, then what really needs to happen is he needs to update that medication list and give me that information. I don't need testimony on that.
> ATTY: So you don't need any testimony from her as far as clarifying the issues and --
> ALJ: I certainly don't have any questions and I'm really, I'm trying to figure out what questions you would have for her, what type of question would you want to ask her?
> ATTY: I would ask her about the problems that he has with the family and other people, the physical limitations that she sees during the day, the problems with the concentration.
> ALJ: What physical limitations? He's already said, I mean when I asked him he said he didn't have any limitations in performing household chores and when you asked him he said, he could, what, wash dishes for 15 minutes. What else specifically do you want to ask Mrs. Dorrell.
> ATTY: Well, if that's all you got out of that then maybe I should, I need to ask Mr. Dorrell some more questions because physically -
> ALJ: Okay, go ahead, what else?

(R. 117-119). Plaintiff then continued testifying about his medical condition and limitations until Plaintiff's attorney said he had no further questions of Plaintiff (R. 120). Plaintiff's wife did not testify. Plaintiff asserts that the failure to allow the testimony of his wife was erroneous and prejudicial, citing

-11-

*Brown v. Shalala*, 44 F.3d 931, 936 (11th Cir. 1995) and *DePaepe v. Richardson,* 464 F.2d 92, 101 (5th Cir. 1972).

*Brown* involved an unrepresented[3] and confused claimant and an ALJ that had failed to obtain records of treatment about which claimant testified, agreed to get a rehabilitation report, but failed to do so, and failed to question an available witness where the claimant had "great difficulty" explaining how her ailments prevented her from working. *Brown*, 44 F.3d at 936. By contrast, Plaintiff here was represented zealously by counsel, testified at length (and without difficulty) regarding his ailments and why they prevented him from working, and there is no allegation that the ALJ failed to obtain treatment or vocational records. The circumstances are not analogous. Similarly, the citation to *DePaepe* is curious, as it involves completely disparate facts, and does not include the principle Plaintiff attributes to it.[4]

It appears from the transcript and her decision that the ALJ felt the testimony of Plaintiff's wife was unnecessary as it would be cumulative. There is nothing in the record to belie that conclusion. While Plaintiff paints this objection in due process terms, there is no constitutional right to present unlimited cumulative or repetitive evidence at an administrative hearing. *See also* HALLEX 1-2-6-60(B), 1993 WL 751900 (S.S.A. Sept. 2, 2005) (noting that the ALJ should give the claimant or his representative "broad latitude" in questioning witnesses; however, "this latitude does not require the ALJ to permit testimony that is repetitive and cumulative …."). Even if the ALJ erred in prohibiting the testimony of Plaintiff's wife:

> a showing of prejudice must be made before we will find that a hearing violated claimant's rights of due process and requires a remand to the Secretary for

---

[3] When the right to representation has not been waived, the hearing examiner's obligation to develop a full and fair record regarding an unrepresented claimant rises to a special duty. *Brown,* 44 F.3d at 934. The instant case is not a special duty case, as Plaintiff was represented by counsel.

[4] Plaintiff states: "When a claimant tries to present testimony in support of his subjective complaints but is precluded from doing so by the ALJ, the claimant has done all that is necessary to establish prejudice. *See Depaepe v. Richardson*, 464 F.2d 92, 101 (5th Cir. 1972)." (Pl. Brief at p. 15). There is nothing in the *DePaepe* opinion to support this conclusion. Indeed, *DePaepe* did not involve an alleged failure to allow testimony and the word "prejudice" is not in that opinion.

> reconsideration.[] *Smith,* 677 F.2d at 829; *Ware,* 651 F.2d at 414. This at least requires a showing that the ALJ did not have all of the relevant evidence before him in the record (which would include relevant testimony from claimant), or that the ALJ did not consider all of the evidence in the record in reaching his decision. *See Smith*, 677 F.2d at 830 (relevant inquiry is whether the record reveals evidentiary gaps which result in unfairness or clear prejudice).

*Kelley v. Heckler*, 761 F.2d 1538, 1540 (11th Cir. 1985). Plaintiff has failed to show that he was prejudiced by the failure to allow "corroborating" testimony from his wife[5] and failed to show any evidentiary gaps in the record. As the Eleventh Circuit noted on similar facts:

> The failure to produce other material does not rise to the level of a constitutional violation if the ALJ had sufficient evidence on which to base his decision. In determining that the husband's testimony was unnecessary, the ALJ explained that McCloud's testimony lacked credibility and was unsupported by the medical evidence. Cf. *Walden v. Schweiker*, 672 F.2d 835, 839-40 (11th Cir.1982). When the medical evidence supports the ALJ's determination, the ALJ does not err by refusing to admit lay testimony. *Landry v. Heckler*, 782 F.2d 1551, 1554 (11th Cir.1986). At any rate, any error in the exclusion of the husband's testimony was harmless.

*McCloud v. Barnhart*, 166 Fed.Appx. 410, 417 (11th Cir. 2006). Here, too, Plaintiff does not contest the ALJ's findings regarding the lack of medical evidence supporting disability, nor does Plaintiff dispute the record supporting the adverse credibility finding. As substantial evidence supports the ALJ's determination, no reversible error is shown.

*The VE testimony*

The final objection raised by Plaintiff is the reliability of the VE testimony. Plaintiff contends that the testimony of a vocational expert must be evaluated in accordance with the evidentiary standard set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). According to Plaintiff, as the VE here could only offer a "rough approximation" of the number of jobs that exist in the national

---

[5] Although Plaintiff argues in his brief that his wife would have testified to much more than just corroborating Plaintiff's testimony and adding evidence of medication changes, the ALJ explicitly asked counsel "what is she going to tell me that he hasn't already told me?" and counsel replied that he really did not know, other than medication changes and unspecified "details" (R. 118). As noted by the ALJ in her decision, although Plaintiff was given the opportunity to submit additional information regarding medication changes, no such evidence was submitted (R. 29).

economy and did not use a specific methodology for calculating the number of jobs, his testimony is not substantial evidence supporting the conclusion at step five. The contention is without merit.

Plaintiff cites no authority holding that the evidentiary standard for *courts* formulated in *Daubert* must be applied in social security agency hearings. Indeed, in the immigration case he cites, the Seventh Circuit recognized: "The ground rules for qualifying expert witnesses in federal trials are given by the *Daubert* decision. But *Daubert* interprets Fed.R.Evid. 702, and the federal rules of evidence do not apply to the federal administrative agencies; so, strictly speaking, neither does *Daubert*." *Niam v. Ashcroft*, 354 F.3d 652, 660 (7th Cir. 2004). To the extent Plaintiff is nonetheless advocating for this Court to find that the *Daubert* standard applies in this context, despite the obvious differences between an adversarial court hearing under the federal evidence rules and administrative hearings conducted pursuant to the Social Security Act and the SSA's regulations, the Court cannot oblige.

The Commissioner bears the burden of establishing that there are sufficient jobs in the national economy that the claimant can perform given her age, education, work experience, and RFC. *Winschel v. Commissioner of Social Security*, 631 F.3d 1176, 1178 (11th Cir. 2011). "The Commissioner 'may rely solely on the VE's testimony' in making this decision." *Pena v. Commissioner of Social Security*, 489 Fed.Appx. 401, 402 (11th Cir. 2012). When a VE testifies about the availability of jobs "statistical specificity is not required." *Id.* Moreover, the methodology used by the VE here (reliance on labor surveys, personal experience, the Bureau of Labor Statistics, the Occupational Employment Statistics, the DOT, information from other VE's, and his training- R. 55-69, 72-75) has been recognized as sufficient in this circuit to support a VE opinion. As the Eleventh Circuit observed in *Bryant v. Commissioner of Social Security*:

> The VE testified that she based her reductions on census figures, state information, labor market surveys, and job analyses. Given that information, she arrived at an "approximate percentage" of jobs that an individual with Bryant's functional limitations would be able to perform. Thus, the record reflects that the VE had a reasoned basis for the figures at which she arrived. The Social Security regulations provide that an ALJ may rely on a

> VE's knowledge and expertise, and they do not require a VE produce detailed reports or statistics in support of her testimony.

*Bryant*, 451 Fed.Appx. 838, 839 (11th Cir. 2012). *See also Pena, supra* (VE was not required to specify the formula he used to arrive at the reduced figure and the rationale for that formula for his conclusion to be reliable); *Jones v. Apfel*, 190 F.3d 1224, 1230 (11th Cir. 1999) ("VE testified that he compiled the employment information from a personal survey, contact with employers and other VEs and a survey of literature such as census reports and county business patterns.").

Here, the VE formulated his opinion and testified at length about other jobs a hypothetical person with Plaintiff's RFC and background could perform and the ALJ was entitled to rely on this opinion. As such, substantial evidence supports the ALJ's decision that Plaintiff was not disabled under the Act. *See* 20 C.F.R. § 404.1520(g) (a claimant is not disabled if he or she can perform other work that exists in significant numbers nationally); *Jones*, 190 F.3d at 1228 (at step five of the sequential evaluation, a claimant must prove he cannot perform the jobs identified by the Commissioner).

## Conclusion

The administrative decision was made in accordance with proper legal standards and is supported by substantial evidence. It is therefore **AFFIRMED.** The Clerk is directed to enter judgment accordingly and close the file.

**DONE** and **ORDERED** in Orlando, Florida on June 1, 2015.

*David A. Baker*
DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record